OPINION
Michael Bailey Sr. appeals from the judgment of the Geauga County Courtof Common Pleas, Juvenile Division, entered on February 1, 2001, grantingthe Geauga County Job and Family Services' ("GCJFS") motion for permanentcustody of the neglected and dependent children, Michael, Gary, andEdward Bailey. Appellant's parental rights were terminated. Thefollowing facts are relevant to this appeal.
 On August 30, 1999, GCJFS, appellee, filed a complaint pursuant toR.C. 2151.03(A)(2) and (3) and R.C. 2151.04(C) alleging that Michael,Gary and Edward Bailey were neglected and dependent children. Thecomplaint arose out of: domestic violence between Kellie Bailey,mother, and Michael Bailey, father; the parents' failure to addresshygiene issues; and, general infant care concerns previously reported toGCJFS. Appellant was not represented by counsel at a hearing held onSeptember 7, 1999 and requested that counsel be appointed. On September7, 1999, appellant's application for appointment of indigent counsel wasdenied for failure to complete the application. On September 10, 1999,GCJFS was ordered to exercise protective custody over the Bailey childrenand a Court Appointed Special Advocate ("CASA") Guardian ad Litem ("GAL") was appointed for the Bailey children.
During a pretrial hearing, on September 23, 1999, appellant entered a plea of true to an amended complaint. While appellant was not represented by counsel, the judgment entry reflects that he waived his right to counsel. On October 1, 1999, the juvenile court adjudicated that the children were neglected and dependent children and extended the protective custody of GCJFS.
On October 5, 1999, the GAL filed a report recommending that the parents find stable housing, attend parenting classes, obtain counseling and anger management counseling. The GAL also recommended that the children remain in the custody of GCJFS. Appellant failed to appear at a disposition hearing held on October 8, 1999.
At a disposition hearing, held on October 8, 1999, the court adopted the case plan filed on September 23, 1999, with one amendment. The case plan stated that appellant will attend and participate in: individual counseling, anger management counseling and parenting classes. Additionally, the plan prohibited appellant from arguing with adults in the presence of the children.
On December 27, 1999, a new CASA GAL was appointed for the Bailey children. On February 10, 2000, the GAL filed a report expressing concern for the children and about the poor housing conditions. She also recommended that unless Kellie Bailey can assure the court that she is willing to take the necessary steps to maintain a safe, stable, and healthy environment, alternative placement should be considered.
At a review hearing, on February 22, 2000, the court on its own motion, placed the children in the temporary custody of GCJFS. Appellant was incarcerated,[1] and therefore was not present at the review hearing.
On August 14, 2000, the GAL filed a report stating that the children enjoyed spending time with their foster parents and that the children's parents had not met the objectives of the case plan. The GAL recommended that the boys remain in foster care so that, if reunification were not possible, the children would already be placed in a permanent home.
On September 6, 2000, the juvenile court found that, despite reasonable efforts on the part of GCJFS, appellant failed to address the issues in the case plan and that it was in the children's best interest to remain in the temporary custody of GCJFS.
On December 5, 2000, GCJFS filed a motion for permanent custody. Michael Bailey and his mother, Karen Bailey, filed objections to GCJFS's motion. Karen Bailey filed a motion to intervene, which was subsequently granted.
On January 12, 2001, the GAL filed a report recommending that appellant's parental rights be terminated and that the current foster family adopt the children. In her report, the GAL stated that appellant never contacted her and that she last met with appellant during the summer, while he was incarcerated. At that time, appellant had told her that he liked to fight, showed no indication that he was willing to change his attitude, and never asked about his children. The GAL opined that appellant would not be a "good candidate for parenting the boys."
A permanent custody hearing was held on January 19, and on January 26, 2001. In total, GCJFS presented twelve witnesses and forty-six exhibits in support of its motion for permanent custody. On February 1, 2001, the court found, by clear and convincing evidence, that it was in the best interest of the children that GCJFS be granted permanent custody of the children. From this judgment, appellant assigns the following as error:
 "[1.] The trial court erred to the prejudice of the appellant when it denied him procedural due process of law as guaranteed by the Ohio and U.S. constitutions.
 "[2.] The trial court erred in its determination that permanent custody is in the best interest of the minor children.
 "[3.] The juvenile court's finding that the minor children cannot be placed with appellant within a reasonable amount of time was against the manifest weight of the evidence.
 "[4.] The trial court erred when it failed to appoint an attorney as guardian ad litem for the minor children."
 In appellant's first assignment of error, he contends that he was denied due process of law because he was without counsel at the hearings held on September 7, 1999, September 23, 1999, October 8, 1999, and February 18, 2000. Appellee contends that appellant was informed of his right to an attorney and at one point waived his right to an attorney.
Review of the record reveals that appellant was informed of his right to counsel and, in fact, did request an attorney at the initial hearing. Appellant's application for appointment of indigent counsel was denied because of his failure to complete the application. On September 8, 1999, the court made several preadjudicatory orders without objection by appellant. The court's judgment entry reflects that the court advised the parties of their right to counsel.
Further, the juvenile court's judgment entry from the hearing held on September 23, 1999 states that "Michael Bailey Sr. acknowledged his right to be represented by counsel and waived the same electing to proceed with the hearing without an attorney" before entering a plea of true to the amended complaint. Since the record shows that appellant was informed of his right to counsel, failed to complete the application for indigent counsel, and waived his right to counsel at the September 23, 1999 hearing, his first assignment of error is without merit.
In appellant's second and third assignments of error, he argues that the juvenile court erred in finding that the children could not be placed with appellant within a reasonable amount of time and that granting GCJFS's motion for permanent custody was not in the children's best interest.
R.C. 2151.414(B) provides a two-pronged analysis for the juvenile court to apply when ruling on a motion for permanent custody. After a hearing on the motion, the juvenile court may grant permanent custody of the child to the agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child and that one of the following is applicable: "(1) the child is not abandoned or orphaned, and the child cannot be placed with the parents; (2) the child is abandoned and the parents cannot be located; or (3) the child is orphaned and there are no relatives of the child who are able to take permanent custody." In re Jacobs (Aug. 25, 2000), Geauga App. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, unreported at *9. Generally, the juvenile court first determines whether one of the circumstances delineated in R.C. 2151.414(B)(1) through (3) is presented before proceeding to a determination regarding the best interest of the child.Id at *9.
"An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence." In the Matterof Taylor (June 11, 1999), Ashtabula App. 97-A-0046, 2000 Ohio App. LEXIS 2620, unreported at *3. Clear and convincing evidence is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. In re Adoption of Holcomb 1985),18 Ohio St.3d 361, 386, 481 N.E.2d 613.
Turning to the instant case, we will first examine the juvenile court's determination that the children could not or should not be placed with either parent within a reasonable time. A juvenile court has the authority to grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that the child, not being abandoned or orphaned, cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C. 2151.414(B). In determining whether the child cannot be placed or should not be placed with either parent within a reasonable time period pursuant to R.C. 2151.414(E), the juvenile court must consider all relevant evidence before making this determination and is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the conditions enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents. See Shchigelski, supra.
Relevant to the case subjudice, the juvenile court determined, by clear and convincing evidence that, following the placement of the child outside the home and notwithstanding reasonable case planning and diligent efforts by the agency, the parent had failed continuously andrepeatedly to substantially remedy the conditions causing the child to beplaced outside the child's home. R.C.2151.414(E)(1). "In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." R.C. 2151.414(E)(1).
This court has previously held that noncompliance with a case plan is a basis for terminating parental rights. In re Thurlby (June 15, 2001), 2000-A-0088, unreported; In re Ranker (Oct. 6, 2000), Portage App. No. 99-P-0072, 2001 Ohio App. LEXIS 2714, unreported at *10; citing In reBrofford (1992), 83 Ohio App.3d 869, 878, 615 N.E.2d 1120. The issue to be focused upon is whether the parent has substantially remedied the conditions that caused the child's removal. In re Shchigelski, supra at *13. Generally, the case plan's objectives are geared toward remedying the conditions that initially caused the child's removal.
In the instant case, the juvenile court found that appellant had failed to address the issues and concerns that caused the children to be placed outside their home, thus establishing R.C. 2151.414(E)(1). See, e.g,.Shchigelski at *14. In particular, this was established clearly and convincingly by appellant's basic default on the case plan. Additionally the juvenile court expressed concern that if the children were allowed to return to the parents' home they would be at risk of exposure to illegal substance abuse and domestic violence between the parents and that poor hygiene and poor educational support of the children would continue based on the parents' continued failure to address these issues. These findings are sufficient to sustain the court's judgment. See e.g.Shchigelski at *14.
Review of the record reveals that appellant did not make efforts to comply with the case plan, as required by statute. The objectives of the case plan were directed toward remedying the conditions that initially caused the children to be removed from the home.
During appellant's incarceration at the Safety Center, he failed to utilize the services made available to him for the purpose of changing parental conduct and to allow him to resume and maintain his parental duties. Ms. Rita Hosmer ("Hosmer"), jail administrator, testified that various programs were available to the appellant while he was incarcerated. These programs include an alcohol and drug rehabilitation program called T.J.'s Program, Alcohol Anonymous ("AA") services, and access to Ravenwood Mental Health Center ("Ravenwood") for counseling. Hosmer testified that T.J. evaluated appellant, but appellant chose not to attend T.J.'s Program. Further, she testified that appellant was set up for parenting and counseling at Ravenwood, but chose to attend only two times.
Upon release from jail, appellant did not make reasonable efforts to comply with the case plan. While appellant attended six out of eight parenting classes, he failed to complete the objectives of the case plan, to wit: completion of individual counseling, anger management classes, and parenting classes. Additionally, appellant tested positive for marijuana. Thus, the juvenile court was presented with clear and convincing evidence that appellant failed to remedy the conditions which resulted in the children being placed in the custody of GCJFS and of R.C. 2151.414(E)(1) ; appellant's third assignment of error lacks merit.
Proceeding to the second prong of the analysis, the juvenile court determined that it was in the children's best interest to grant permanent custody to GCJFS. In making its determination of the best interest of the children, the juvenile court stated that it considered the factors outlined in R.C. 2151.414(D).
The juvenile court must consider all the factors enumerated in R.C.2151.414(D) when making a determination of the best interest of a child at a permanent custody hearing. See e.g., In re Alexander (Dec. 19, 1997), Trumbull App. No. 96-T-5510, 1997 Ohio App. LEXIS 5742, unreported at *5. These factors include: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999; (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D). Failure to discuss each of these factors when determining the best interest of the child is prejudicial error. In re Jacobs (Aug. 25, 2000), Geauga App. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, unreported at *5. Thus, the record must show that the juvenile court considered all of the factors enumerated in R.C. 2151.414(D) when reaching its judgment, however, no one factor is dispositive. Id.
Review of the February 1, 2001 judgment entry demonstrates that the trial court considered all five factors when reaching its judgment. The record supports the juvenile court's finding that appellant has failed to substantially comply with any aspect of the case plan with the exception of attending a majority of the parenting classes made available to him. As discussed, supra, appellant failed to utilize the counseling and services available to him during his incarceration at the Safety Center. Additionally, upon release appellant did not make reasonable efforts to comply with the case plan. While appellant's assertion that he did attempt to obtain a new counselor, after he was released, is supported by the record, the record also shows that appellant was inconsistent in attending his prior counseling sessions.
We conclude that the juvenile court did not err in determining that granting GCJFS's motion for permanent custody was in the children's best interest, thus, appellant's second assignment of error lacks merit.
In appellant's fourth assignment of error, he argues that the juvenile court erred in failing to appoint an attorney GAL. Appellant relies on the dissenting opinion in Shchigelski, supra.
The decision whether to appoint a CASA GAL or attorney GAL lies in the discretion of the juvenile court. R.C. 2151.281(H). Both Juv.R. 4(C) and R.C. 2151.281(H) contemplate the appointment of an individual who is not an attorney as guardian ad litem for an alleged abused, neglected, and/or dependent child. Byram v. Lucas County Children Services Bd. (Nov. 22, 1991), Lucas App. No. L-91-179, LEXIS 5584, unreported at *14-15. Further, a dissenting opinion is not binding precedent. Thus, we conclude that the court did not err in appointing a CASA GAL instead of an attorney GAL.
For the foregoing reasons, the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.
 ____________________________ JUDGE ROBERT A. NADER
FORD, P.J., GRENDELL, J., concur.
[1] Appellant was incarcerated in the Geauga County Safety Center for domestic violence and a probation violation from October 21, 1999 through June 20, 2000.